# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY D. ADAMS,<br><br>  Plaintiff,<br><br>  vs.<br><br>SCME MORTGAGE BANKERS, INC., et al,<br><br>  Defendants.<br>_____/ | CASE NO. CV F 09-0501 LJO SMS<br><br>**ORDER ON DEFENDANT'S F.R.Civ.P. 12(b)(6) MOTIONS TO DISMISS AND TO EXPUNGE LIS PENDENS**<br>(Docs. 7, 11.) |

## INTRODUCTION

Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") seeks to dismiss as incognizable and time barred pro se plaintiff Mary D. Adams' ("Ms. Adams'") claims arising from non-judicial foreclosure of her home. MERS also seeks to expunge a lis pendens which Ms. Adams filed regarding her home. Ms. Adams filed no timely papers to oppose MERS dismissal or expungement of the lis pendens. This Court considered MERS' F.R.Civ.P. 12(b)(6) motion to dismiss and motion to expunge lis pendens on the record and VACATES the June 4 and 8, 2009 hearings, pursuant to Local Rule 78-230(h). For the reasons discussed above, this Court DISMISSES MERS and EXPUNGES the lis pendens.

1

# BACKGROUND

## Ms. Adams' Home Loan And Default

On September 15, 2005, Ms. Adams applied to refinance the mortgage on her Fresno home ("property") through defendant Mortgage Center of America, Inc. ("MCA"), a mortgage broker. Ms. Adams obtained from defendant SCME Mortgage Bankers, Inc. ("SCME") a $342,556.15 refinance loan which included a $5,655 yield spread premium ("YSP") paid to MCA.

On November 30, 2005, Ms. Adams executed for the loan a promissory note and a deed of trust ("DOT") to secure the loan with the property. The DOT was recorded December 15, 2005[1] and identifies MERS as beneficiary.

Ms. Adams fell behind in her loan payments. In October 2008, MERS commenced non-judicial foreclosure of the property. A trustee's sale was set for February 13, 2009.

## Ms. Adams' Claims

On February 18, 2009, Ms. Adams filed in Fresno County Superior Court her complaint ("complaint") to allege YSP and inadequate loan disclosure and related claims against SCME, MERS and MCA. Near its outset, the complaint alleges:

> A yield spread premium (hereinafter "YSP") is a fee paid to the mortgage broker by the lender. For this fee, the mortgage broker tells the borrower that the loan offered is the best loan and interest rate that is available to them at the time based on their credit and income. This statement by the mortgage broker is not true. The borrowers actually qualify for a lower interest rate but, for the YSP, the mortgage broker sells the borrower a loan that is any where from ½ percent to 2 percent higher then [sic] the borrower is qualified. This false statement adds many thousands and thousands of dollars in excess interest to the lender. . . . Yet, when this fraud is perpetrated and a borrower ask [sic] the lender what the YSP is for, the broker tells the borrower, you don't need to worry about it, that is a commission paid by the lender to the broker so, it doesn't come out of your pocket.

The complaint further alleges:

1. "The mortgage broker and lender in this instance lied to the borrower and/or didn't disclose the cost to the borrower that the lender would receive as a result of the YSP";

2. "[N]either MERS or [sic] SCME have the original contract of the alleged transaction and therefore under California law, have no standing and/or right to bring a foreclosure

---

[1] All documents regarding Ms. Adams' loan and default were recorded with the Fresno County Recorder.

2

against Plaintiff";

3. Defendants "intentionally misrepresented the facts with full knowledge that they were not true for the purpose of defrauding Plaintiff";

4. "SCME intentionally failed and/or refused to provide Plaintiff with various disclosures" in that there were no disclosures to reflect "the true cost of the credit transaction" and that a YSP "was being charged";

5. Ms. Adams did not receive two completed copies of the notice of right to cancel;

6. "Defendants were under legal obligation as a fiduciary and had the responsibility of overseeing the purported loan consummation to make sure that Plaintiff's consummation was right and that the Plaintiff received all mandated documentation and material disclosures"; and

7. Defendants "established a pattern and practice of defrauding Plaintiff in that . . . they have not correctly credited payments, correctly calculated interest on accounts and have never accurately debited fees, all based upon the illegal YSP that was paid by the lender to the broker for up-selling the interest rate."

As for specific claims, the complaint alleges:

1. A (first) fraud and deceit intentional misrepresentation cause of action that MCA and SCME "breached their fiduciary duty by misrepresenting that the Plaintiff could only qualify for the interest rate that the current loan has" in that Ms. Adams qualified for a lower interest rate;

2. A (second) negligence by mortgage loan broker cause of action that "MCA negligently failed to supervise the MCA agents that handled the refinance which allowed the intentional fraud and breach of fiduciary duty against Plaintiff";

3. A (third) unfair trade practices cause of action under California Business and Professions Code sections 17200, et seq.,[2] that defendants "engaged in a pattern of unfair practices," "did not provide the required disclosures and broker contract," and falsely represented

---

[2] California Business and Professions Code sections 17200, et seq., will be referred to as "UCL" ["Unfair Competition Law"].

3

|   |   |   |
|---|---|---|
| 1 |   | "consequences of the YSP"; |
| 2 | 4. | A (fourth) unjust enrichment cause of action that "MCA and SCME have been unjustly enriched at the expense of the Plaintiff not only for the YSP but also for the many thousands of dollars in extra interest to be paid over the life of the loan"; |
| 5 | 5. | A (fifth) injunctive relief cause of action to enjoin non-judicial foreclosure of the property as MERS lacks the right to foreclose on the property "in that all of the transactions under which SCME and MERS purported to gain an interest in Plaintiff's property were based on actual fraud, constructive fraud, as well as the TILA[3] violations giving rise to Plaintiff's right of rescission" and MERS and/or SCME lack "the original contract and the proper documentation to prove they have the right to foreclose"; and |
| 11 | 6. | A (sixth) intentional infliction of emotion [sic] distress cause of action that defendants' conduct "was outrageous and was done with the knowledge that it would cause Plaintiff to suffer severe emotional distress."[4] |

The complaint seeks compensatory, treble and punitive damages, statutory penalty, an injunction of foreclosure, rescission, and attorney fees.

On February 18, 2009, Ms. Adams also recorded a notice of lis pendens regarding this action for the property.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Standards

Pursuant to F.R.Civ.P. 12(b)(6), MERS attacks Ms. Adams' "unsubstantiated allegations in an effort to stave off inevitable sale of the property for failure to keep current on her monthly mortgage payments." MERS challenges the Ms. Adams' claims as incognizable and lacking necessary elements.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

---

[3] The TILA reference appears to be to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing regulations, 12 C.F.R. §§ 226.1-226.29 ("Reg. Z").

[4] The complaint appears to name MERS as a defendant in only the (third) unfair trade practices, (fifth) injunctive relief, and (sixth) infliction of emotion [sic] distress causes of action. MERS appears to challenge the other causes to action to the extent they implicate MERS.

4

of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

MERS further challenges Ms. Adams' claims as time barred. A limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the

limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978). If the limitations defense is not apparent on the complaint's face and the motion to dismiss is not accompanied by acceptable affidavits, an appropriate summary judgment motion may be employed. *Jablon*, 614 F.2d at 682.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[5] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). As such, this Court may consider Ms. Adams' pertinent loan and foreclosure documents.

///

---

[5] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

## YSP Allegations

### *Acceptable Practice*

MERS challenges the complaint's YSP allegations in that YSPs "are legal and are not considered costs at closing to be disclosed to a borrower" under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq.

"A yield spread premium, or 'YSP,' is a lump sum paid by a lender to a broker at closing when the loan originated by the broker bears an above-par interest rate." *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1007 (9th Cir. 2002).

The Department of Housing and Urban Development has explained:

> Payments to brokers by lenders, characterized as yield spread premiums, are based on the interest rate and points of the loan entered into as compared to the par rate offered by the lender to the mortgage broker for that particular loan (e.g., a loan of 8% and no points where the par rate is 7.50% will command a greater premium for the broker than a loan with a par rate of 7.75% and no points). In determining the price of a loan, mortgage brokers rely on rate quotes issued by lenders, sometimes several times a day. When a lender agrees to purchase a loan from a broker, the broker receives the then applicable pricing for the loan based on the difference between the rate reflected in the rate quote and the rate of the loan entered into by the borrower. . . .

Real Estate Settlement Procedures Act Statement of Policy 1999-1, 64 Fed.Reg. 10080, 10081 (Mar. 1, 1999) ("1999 Statement of Policy"); *see Byars v. SCME Mortgage Bankers, Inc.,* 109 Cal.App.4th 1134, 1141, 135 Cal.Rptr.2d 796 (2003).

The California Court of Appeal has explained that "YSP's are widespread and commonly used as a method to compensate mortgage brokers for services provided to borrowers and the lender . . .[and] are accepted vehicles for lenders to compensate mortgage brokers for services rendered in the closing transaction." *Byars*, 109 Cal.App.4th at 1149, 135 Cal.Rtpr.2d 796 (citation omitted).

MERS characterizes the complaint as "a rant on the ills of YSP's." MERS argues Ms. Adams "specifically dealt with her broker," not MERS or SCME, to eliminate MERS or SCME's liability "arising out of the YSP issue."

The complaint fails to establish YSP liability as to MERS, which is merely the DOT beneficiary and unconnected to the YSP and origination of Ms. Adams' loan. The complaint's YSP allegations fail as to MERS.

/ / /

### *Heightened Pleading*

MERS faults the complaint's absence of "allegations as to the names of the persons who spoke for SCME or MERS." This Court construes MERS to argue that the complaint fails to meet F.R.Civ.P. 9(b)'s standard to allege fraudulent conduct.

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[6] A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great

---

[6] F.R.Civ.P. 9(b)'s particularity requirement applies to state-law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ("fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged).

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Ca. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Ca. 1988)).

To the extent it alleges YSP allegations sounding in fraud, the complaint is severely lacking and fails to satisfy F.R.Civ.P. 9(b) "who, what, when, where and how" requirements as to MERS. *See Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991) (a plaintiff asserting fraud against a corporate employer must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.") The complaint suggests nothing to warrant an attempt to amend.

### **Fraud And Negligence Limitations Defenses**

MERS argues that the complaint's claims sounding in fraud and negligence are barred by limitations periods. MERS points to the three-year limitations of California Code of Civil Procedure section 338(d) for an "action for relief on the ground of fraud" and to the two-year limitations of California Code of Civil Procedure section for an action on "liability no founded on an instrument of writing." MERS argues that the limitations periods started on November 30, 2005, when Ms. Adams signed her loan documents. *See Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) ("The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.") MERS continues that equitable tolling is unavailable in the absence of "adequate allegations." Equitable tolling is considered when "the complaint, liberally construed in light of our 'notice pleading'

9

system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir.1993).

The complaint's fraud and negligence claims are susceptible to limitations defenses. The complaint lacks allegations to invoke equitable tolling. The fraud and negligence claims are time barred to warrant their dismissal.

## **Standing To Foreclose**

The complaint alleges that MERS lacks standing to foreclose in absence of possession of "the original contract of the alleged transaction." The injunctive relief claims "demands that MERS and/or SCME provide the court with the original contract and the proper documentation to prove that they have a right to foreclose. It is Plaintiff's contention that they have no such document and do not have standing in this court."

"If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440, 129 Cal.Rptr.2d 436 (2003). The California Court of Appeal has explained non-judicial foreclosure under California Civil Code sections 2924-2924l:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994).

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d (1994).

"Under Civil Code section 2924, no party needs to physically possess the promissory note."

*Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

The property's chain of title demonstrates without doubt that SCME is the lender under the DOT. SCME is empowered to foreclose on the property under California Civil Code section 2932.5, and MERS, as the DOT trustee, is authorized to conduct foreclosure under California Civil Code sections 2924-2924l. Ms. Adams' notions regarding note possession fail to revive her meritless injunctive relief and related claims.

### **TILA And RESPA Limitations Defenses**

MERS argues that to the extent Ms. Adams' claims are based on TILA and RESPA, they are time barred.

#### *TILA Rescission*

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a). TILA rescission may be extended up to three years if the lender fails to comply with TILA disclosure requirements. *Semar*, 791 F.2d at 701-702; 15 U.S.C. § 1635(f).

15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

> An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later. (Bold added.)

The United States Supreme Court has described as "manifest" Congress' intent to prohibit rescission

after the three-year period has run:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*, at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998).

The face of the complaint reveals that Ms. Adams' rescission remedy expired November 30, 2008, months prior to filing this action. Based on extinction of such remedy, Ms. Adams is unable to rely on equitable tolling to revive their stale rescission claim. This Court construes Ms. Adams' lack of timely opposition as their concession that her TILA rescission claim is subject to dismissal.

### *TILA Damages*

A TILA damages claims is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).

The limitations period started on November 30, 2005 when Ms. Adams signed her loan documents. The February 18, 2008 filing of the complaint renders her TILA damages claim untimely. The Ninth Circuit Court of Appeals noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

Although the complaint lacks allegations of equitable tolling, application of the doctrine is unavailable to Ms. Adams. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is

12

unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Santa Maria*, 202 F.3d at 1178.

Nothing in the complaint hints that Ms. Adams was prevented to compare her loan documents and disclosures with TILA statutory and regulatory requirements. The complaint lacks allegations of facts to invoke equitable tolling. Ms. Adams' TILA damages claim is time barred, and Ms. Adams does not oppose dismissal.

### *RESPA*

The complaint's reliance on RESPA is unsupported in the absence of allegations of "improper kickbacks" and a private right of action under RESPA disclosure requirements. *See Bloom v. Martin*, 865 F.Supp. 1377, 1384-1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996). Moreover, a RESPA claim is susceptible to the one-year limitations period of 12 U.S.C. § 2614(a) in that Ms. Adams filed the complaint more than three years after the November 30, 2005 loan transaction.

In short, TILA and RESPA claims against MERS are barred.

### **Lack Of Written Broker Contract**

MERS notes that it is not subject to a claim based on absence of a written broker contract. MERS points to a leading California real estate treatise: "The licensed residential mortgage lender must enter into a written contract with the borrower as soon as practicable after a borrower requests that the licensee arrange a loan and before the performance of any brokerage services." 2 Miller & Star, *Cal. Real Estate* (3rd ed.) Regulation, § 4:46, p. 141. MERS explains that the written contract requirement runs between Ms. Adams and MCA and has "no bearing" on MERS.

MERS is correct that it is not subject to a claim arising from absence of a written broker contract. Ms. Adams appears to realize as much as the target of her negligence by mortgage loan broker claim is MCA.

### **Federal Preemption**

MERS contends that Ms. Adams' state law claims (unfair trade practices, fraud, negligence,

unjust enrichment, intentional infliction of emotional distress, and injunctive relief) are barred by federal preemption.

"[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." *Bank of America v. City and County of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002), *cert. denied*, 538 U.S. 1069, 123 S.Ct. 2220 (2003). In *Silvas v. E*Trade Mortgage Corp.,* 421 F.Supp.2d 1315 (S.D. Cal. 2006), *aff'd*, 514 F.3d 1001 (9th Cir. 2008), a fellow district court held that the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461, et seq., preempted claims under the UCL if the UCL claims were predicated on TILA. *See Reyes v. Downey Saving & Loan Ass'n*, 541 F.Supp.2d 1108, 1115 (C.D. Cal. 2008). The court reasoned that "when federal law preempts a field, it does not leave room for the states to supplement it." *Silvas*, 421 F.Supp.2d at 1319 (citing *Rice v. Santa Fe Elev. Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). States may not avoid preemption by adopting federal laws and adding supplemental remedies. *Reyes*, 541 F.Supp.2d at 1115; *see Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc.*, 379 F.3d 641, 648-49 (9th Cir.2004). "Plaintiffs' use of the UCL as predicated on TILA is preempted." *Reyes*, 541 F.Supp.2d at 1115; *see Nava v. Virtual Bank*, 2008 WL 2873406, at *7 (E.D. Cal. 2008) ("[F]or the same reason that plaintiff's UCL claim based on unfair or fraudulent business practices is preempted by federal law, plaintiff's UCL claim based on violation of TILA is also preempted. Moreover, plaintiff's UCL claim based on violation of TILA is also preempted by federal law since its application would supplement TILA by changing TILA's framework.")

Ms. Adams' unfair trade practices claims against MERS, if any, are tied to TILA or other federal law to render a UCL claim preempted. Ms. Adams is unable to avoid preemption in the guise of a UCL claim. MERS provides no pertinent authority that Ms. Adams' state common law claims are preempted.

In addition, since Ms. Adams' TILA rescission and damages claims are time barred, her UCL claim based on TILA violations likewise fails. "A court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.' " *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000); *see Rubio v. Capital One Bank (USA)*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008) (since plaintiff's TILA claim failed, plaintiff's UCL claim predicated on TILA likewise failed). The time bar of Ms. Adams' TILA rescission and damages

claims bolsters dismissal of her UCL claim to prevent circumvention of TILA limitations periods.

## Fiduciary Duty

MERS contends that it lacks fiduciary liability to Ms. Adams in the absence of allegations that it or SCME participated "beyond the domain of the usual money lender."

"The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)). A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53 (citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).

Moreover, MERS is not a creditor, has never had a beneficial interest in the DOT, and does not extend consumer credit, and the complaint does not allege as much. An "ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to the execution of the trust." *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973). A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt." *Lupertino*, 35 Cal.App.3d at 748, 111 Cal.Rptr. 112 (quoting *Bank of Italy etc. Assn. v. Bentley,* 217 Cal. 644, 656, 20 P.2d 940 (1933)). The California Court of Appeal has explained a deed of trust trustee's limited authority:

> The trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust." (*Vournas v. Fidelity National Title Ins. Co.* (1999) 73 Cal.App.4th 668, 677, 86 Cal.Rptr.2d 490.) Consistent with this view, California courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust. As our Supreme Court noted in *I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596, "The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes.... [¶] ... [T]here is no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes." ( Id. at pp. 287-288, 216 Cal.Rptr. 438, 702 P.2d 596.)

*Heritage Oaks Partners v. First American Title Ins. Co.,* 155 Cal.App.4th 339, 345, 66 Cal.Rptr.3d 510 (2007).

The complaint points to no basis to assert a fiduciary duty or liability on MERS.

## **Intentional Infliction Of Emotional Distress**

MERS argues that it is not subject to intentional infliction of emotional distress in that foreclosure is not "outrageous conduct" and is privileged.

The elements of a cause of action for intentional infliction of emotional distress are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987). The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)). Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d at 903, 2 Cal.Rptr.2d 79 (1991). The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"In the context of debt collection, courts have recognized that the attempted collection of a debt

by its very nature often causes the debtor to suffer emotional distress." *Ross v. Creel Printing & Publishing Co.,* 100 Cal.App.4th 736, 745, 122 Cal.Rptr.2d 787 (2002) (citing *Bundren v. Superior Court,* 145 Cal.App.3d 784, 789, 193 Cal.Rptr. 671 (1983). "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671. Such conduct is only outrageous if it goes beyond "all reasonable bounds of decency." *Bundren,* 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.

"The assertion of an economic interest in good faith is privileged, even if it causes emotional distress." *Ross,* 100 Cal.App.4th 736, 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 395, 89 Cal.Rptr. 78 (1970)); *Cantu v. Resolution Trust Corp.,* 4 Cal.App.4th 857, 888, 6 Cal.Rptr.2d 151 (1992). "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Ross,* 100 Cal.App.4th 736, 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Symonds v. Mercury Savings & Loan Assn.,* 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990)).

The complaint fails to allege MERS' outrageous conduct to support intentional infliction of emotional distress. The complaint points to no conduct of MERS outside that generally accepted in the foreclosure process, which is inherently stressful for debtors. The intentional infliction of emotional distress claim fails as to MERS.

### Lis Pendens

MERS further seeks to expunge a lis pendens recorded for the property. A lis pendens is an instrument recorded with the county recorder where real property is located to provide constructive notice of a pending lawsuit affecting title to the real property. *Gale v. Superior Court*, 122 Cal.App.4th 1388, 1395, 19 Cal.Rptr.3d 554, 559 (2004). Expungement is a statutory procedure by which a lis pendens may be removed from a property's title by Court order. Cal. Code Civ. Proc., §§ 405.30 et seq.; *Shah v. McMahon*,148 Cal.App.4th 526, 529, 55 Cal.Rptr.3d 792, 795 (2007).

Expungement of a lis pendens is mandatory where the "probable validity" of the underlying claim has not been established "by a preponderance of the evidence." Ms. Adams determined that plaintiff cannot establish the probable validity of her claims to warrant expungement of the lis pendens. Cal. Code Civ. Proc., § 405.32.

MERS requests award of attorneys fees and costs to bring the motion to expunge. A court is required to "direct" an award to the prevailing party of the attorney fees and costs for making or opposing the motion unless: (1) the other party acted with substantial justification; or (2) other circumstances make the imposition of attorney's fees and costs unjust. Cal. Code Civ. Proc., § 405.38. Under the circumstances here, an award of fees and costs is unjust, especially given Ms. Adams' inability to pay her mortgage.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against defendant Mortgage Electronic Registration Systems, Inc.;
2. DIRECTS the clerk to enter judgment in favor of defendant Mortgage Electronic Registration Systems, Inc. and against plaintiff Mary D. Adams;
3. DIRECTS MERS counsel, no later than June 2, 2009, to file and serve a proposed order to expunge the lis pendens; and
4. ORDERS Ms. Adams, no later than June 2, 2009, to show cause in writing why this Court should not dismiss this action against the defendants SCME Mortgage Bankers, Inc. and Mortgage Center of America, Inc.

**This Court ADMONISHES Ms. Adams that this Court will dismiss this action against defendants SCME Mortgage Bankers, Inc. and Mortgage Center of America, Inc. if Ms. Adams fails to comply with this order.**

IT IS SO ORDERED.

**Dated: May 22, 2009**         /s/ Lawrence J. O'Neill
                                UNITED STATES DISTRICT JUDGE